White v. Smith.

---

EDWARD M. WHITE, Respondent, v. SPENCER H. SMITH et al., Appellants.

(GENERAL TERM, SECOND DEPARTMENT, FEBRUARY, 1871.)

Stock-brokers may not revoke their general agreement to buy, hold and sell stocks for a commission and interest on advances, without notice.

And they are liable for damages sustained by their employer by reason of a renunciation of the agreement.

Where a broker, in advance of orders, purchases and delivers stock in fulfillment of his principal's agreement to sell, and refuses to purchase and deliver subsequently when directed, his principal's failure to attempt a purchase of the stock through others is no answer to his claim for damages.

And the principal may rely, it seems, in such case, implicitly upon the fidelity of the broker.

The damages recoverable are the difference between the price paid upon the unauthorized purchase and market value of the stock at the time of refusal.

THIS was an appeal by the defendant from a judgment in his favor upon trial by jury.

The action was brought to recover damages for alleged breach of contract.

It appeared that the defendants, who were stock-brokers in New York city, in August, 1869, made a contract with the plaintiff, who was a resident of St. Louis, Mo., by which they agreed to make purchases and sales of stock and hold and carry the same subject to the plaintiff's orders, upon the customary "margin," or deposit of per centage as security. The defendants were to. be paid the usual commission, and also interest on any excess over the "margin" in the amounts advanced by them. The plaintiff deputized one Treadway of New York to act for him in respect to his stock operations with the defendants under the agreement, and notified the defendants thereof; and between the date of the contract and October 18, 1869, numerous transactions were had between the plaintiff and defendants, through the agency of Treadway ; that, on the 14th of October, 1869, the plaintiff wrote to Treadway from St. Louis, revoking his authority, and requested him to inform the defendants thereof, and that he would thereafter communicate with them directly. On the 16th October, he also telegraphed to Treadway to "sell 300 shares of New York Central Railroad stock at $181 per share or over." The telegram and letter were received at about the same time on the 18th October, and Treadway went to the defendants' place of business and informed one of them, (the defendant Bowen), who was present, of the revocation, and gave them at the same time the plaintiff's order for the sale of New York Central stock, which defendants filled the same day.

Bowen informed Treadway that the revocation of authority and arrangement by which plaintiff was to communicate directly with defendants, was satisfactory, and Treadway thereupon telegraphed the plaintiff to that effect; but afterward, during the same day, the defendant Smith sent for Treadway, and objected to his withdrawing from the agency, and subsequently frequently complained to Treadway of the insufficiency of the plaintiff's margin. Finally, on the first November, he requested Treadway to give him directions for purchase of 300 shares of Central stock, for the purpose of covering the sale of the same amount theretofore made on the

White v. Smith.

18th October. Treadway insisted that he had no authority in the matter, but finally, on being urged, directed the purchase. The stock was then rising in the market, and the purchase was made at prices somewhat in advance of the price at which the plaintiff had sold or agreed to sell. It appeared also that a margin of some $3,000 of the plaintiff's money was then in defendants' hands.

On the 2d November, Central stock declined in price and fell considerably below the price at which the contract for sale had been made on behalf of the plaintiff. On that day the plaintiff communicated directly to the defendants, by telegraph, his directions for purchase of stock to cover his previous sale.

The defendants moved for dismissal of the complaint, but the court held that, for the purposes of the case, the broker is bound to obey the order of his principal, and for disobedience is liable to pay the amount of profits he would otherwise have made. The court also refused to charge that the defendants were only liable for nominal damages. It was contended by the defendants that the original agreement with the plaintiff was conditional upon the continuance of the agency of Treadway to act on his behalf, and there was evidence tending to show this fact.

The court charged the jury that it was for them to determine whether the agency of Treadway was to have been irrevocable; whether, for deficiency of margin, the defendants had authority to protect themselves by buying in or selling without notice to the plaintiff, and whether the defendants consented to the revocation of Treadway's authority; and that, if they should find with the plaintiff on these points, the defendants were obliged to obey his telegram of November 2d, and for omission to do so were liable in damages for the profit to the plaintiff at the price of that day as compared with the price at which the stock had been sold short.

Exceptions were duly taken to the charge and the several portions thereof, and to the measure of damages established.

The jury rendered a .verdict for plaintiff for $1,718.09, and

White *v.* Smith.

the plaintiff brought this appeal upon a case made and exceptions taken.

*John E. Parsons*, for the appellant, cited *Worth* v. *Edmonds* (52 Barb., 40); *Milton* v. *Hudson R. Steamboat Co.* (37 N. Y., 210); *Davis* v. *Shields* (24 Wend., 322); *Peterson* v. *Ayers* (13 C. B., 353); *Williams* v. *Reynolds* (11 Jen., N. S., 793); *Powell* v. *Jessup*, 18 C. B., 336; *Shaw* v. *Holland* (15 M. & W., 136); *Van Diemans Land Co.* v. *Cockrell* (1 C. B., N. S., 732); *Suydam* v. *Allen* (20 Wend., 321); Sedgwick on Dam., 347; *Bell* v. *Cunningham* (3 Pet., 69, 85).

*Reynolds & Ward*, for the respondents, cited *Scott* v. *Rogers* (31 N. Y., 684, 685); *Clarke* v. *Meigs* (10 Bos., 337); *Le Guen* v. *Gouveneur* (1 John. Cas., 436); *Milbank* v. *Dennistoun* (1 Bosw., 246); *Suydam* v. *Allen* (20 Wend., 321); *Evans* v. *Root* (3 Seld., 156); *Blot* v. *Boiceau* (3 Com., 78); *Morris* v. *Sammond* (2 Wash. C. C. R., 203); *De Tassett* v. *Cronsellatt* (2 id., 132); *Rudle* v. *Moore* (3 Jac., 36).

Present—BARNARD, P. J., GILBERT and TAPPEN, JJ.

By the Court—GILBERT, J. The questions of fact in the case were presented to the jury in a charge from the court, to which no exception was taken, and which was free from legal objection. The only questions brought up for review are, whether the plaintiff is entitled to recover at all, and, if he is, what is the rule of damages.

The defendants are stock-brokers, doing business in the city of New York. The plaintiff resides in St. Louis. In August, 1869, he was in the city of New York, and while there, he made an agreement with the defendants, whereby they agreed to purchase and hold, and sell stocks for him, on the security of a margin or deposit, for the usual commission and interest on the advances they might make over and above the margin. At first, Mr. Treadway, a resident of the city of New York, was the agent of the plaintiff, and, as such, gave

orders to the defendants, and transacted the plaintiff's business with them ; but his authority had been revoked, and the defendants notified of such revocation, before the transaction out of which this action arose occurred. That transaction was a purchase on the 1st November, 1869, of 300 shares of stock, to cover a short sale of the same stock, made by the defendants for the plaintiff on the 18th October, 1869. This purchase was no doubt made by the defendants in good faith, under an apprehension, arising from the uncertain and fluctuating state of the stock market, that stocks would advance in price, and thereby the plaintiff would be subjected to loss. But they had no authority from the plaintiff to make the purchase. The sanction given to it by Mr. Treadway in no way affected the plaintiff, for his authority had been revoked with the acquiescence of the defendants. After this revocation, it became the duty of the defendants to await the orders of the plaintiff, and they became responsible for any loss plaintiff might sustain by reason of a violation of this duty. The plaintiff might adopt an unauthorized transaction made on his behalf, and thus be entitled to any profit accruing from it, but his right to repudiate it, and cast all loss occasioned by it on the defendants, is equally clear. These principles are essential to preserve fidelity in agents, and are well settled in law.

On the 2d November, 1869, the stock having declined, the plaintiff directed the defendants to cover the 300 shares which they had sold. This the defendants refused to do. If the defendants had not made the unauthorized purchase on the 1st November, and had complied with this direction, the plaintiff would have made a profit on the transaction in question, amounting to the sum awarded by the jury. But it is said that the defendants are not under an obligation to act for the plaintiff, either for any fixed period or to any definite amount. We think the rule of law is otherwise. By the agreement by which the agency was created, no period was fixed for its continuance, and the only limit as to amount was fixed by the margin or deposit. The agency was not revoked by the plaintiff. It could not be revoked by the defendants

without notice to the plaintiff, and having been founded upon a valuable consideration, a renunciation of the agency by the defendants would have subjected them to a liability for any damages the plaintiff might have sustained thereby. (Story Ag., § 478.)

It is also said that the defendants were not bound to make the advance requisite to make the purchase ordered by the plaintiff, because they might demand an immediate return of the sum advanced, and that no loss can arise from a failure to lend money, to an immediate return of which the lender is entitled. This, also, is a fallacy. For by the agreement the defendants were to make the necessary advances, and to be reimbursed at the close of the transaction. Their security was, in all cases, the sum deposited with them by the plaintiff, and in case of an advance to make a purchase, they held, in addition to such deposit, a pledge of the stocks purchased.

The liability of the defendants was fully established, and the only remaining question is, what is the measure of that liability? It is evident that the plaintiff could not avoid the loss by purchasing the stock, and delivering it himself in fulfillment of the contract made on his behalf by the defendants, for such purchase and delivery had already been made by the defendants themselves—the contract had been performed. Whether, if the plaintiff had purchased the stocks, he could have found a purchaser for them at the price for which the defendants had sold them is conjectural. The inference, from the market price on the day the order was given, is that he could not. But the complete answer is, that he had a right to rely implicitly upon the fidelity of his agents.

The loss resulting directly from their delinquency was the difference between the price they paid for the stocks upon the purchase made without authority, and the market price thereof at the time they were instructed to make the purchase. The verdict of the jury was for this sum.

The judgment and order denying a new trial must, therefore, be affirmed, with costs.

Judgment affirmed.