Bissell, J.
The right construction of the contract into which the parties entered will determine this appeal. The interpretations put on it hy the trial court led to the giving of the instructions which are complained of. If it was a contract for the sale of personal property not in existence at the time of the bargain, and to be produced by the vendor, it would he necessary to decide whether such a sale carried with it an implied warranty that the goods sold were merchantable. The nisi prius court so regarded it, and told the jury that the coal must be of a merchantable quality, and, should they find otherwise, it would justify the defendant in refusing to receive the coal tendered. The matter was not put on the basis of a right to terminate the agency, which was created by the agreement, because of a breach of its terms by the principal, but on the theory of a salé, and a rejection of the goods. This was wholly unwarranted by the legal obligations which the parties were under, and by the ease as it was made, and it must have misled the jury.
In no sense which permits the application of that rule can it be said that the contract was one of purchase and sale. There was no sale of a specific quantity of coal, or of the *64 output of the mine. Taggart was not bound to buy a ton of coal. He might buy a thousand tons a month, all that the mine produced, or none. What he ordered he was bound to receive, and pay for at the price agreed on. In some respects, chiefly relating to the obligation to pay for what he might order, it was like a contract of sale. In the absence of an obligation to order, take, or purchase any amount, definite or indefinite, it lacked an element which always accompanies a contract of sale. The company was obligated to fill any orders which Taggart might send, to the extent of their output, at so much per ton. The correlative promise by Taggart was in reality the assumption of an agency to dispose, as far as he might be able, of what the company might produce. The pith of the agreement, which was of advantage, to the coal company, was the contract to work up a trade for their coal, which Taggart assumed. His compensation was in the price at which he was permitted to buy. Any breach of this agreement by Taggart without a legal excuse would necessarily subject him to a liability enforceable by action. The time specified in the contract for the duration of the agency is not essential to the liability. As a general thing, an agent may at any time renounce his employment, but he must do it in good faith, and in such fashion as not to injure his principal. When once he has entered on his employment, he may not renounce it without reasonable cause; and, failing in this, he will render himself liable for the consequences. Story, Ag. § 478; White v. Smith, 6 Lans. 5; U. S. v. Jarvis, Daveis 274; Elsee v. Gatward, 5 Term R,. 143.
When the agreement is that he shall continue for a definite period, and he commences to do what he has promised, a fortiori will he be liable to respond in damages if he break his engagement without legal excuse.
When the company averred, and offered evidence tending to show, that Taggart had broken his contract in this particular, they were entitled to go to the jury on the question of damages without the burden of a stated liability, that the *65 sale was one which carried with it an implied warranty of quality. The plaintiff could doubtless insist that he had a right to withdraw from the engagement because of the failure of the company to furnish coal which was salable in the market; but he must assume the burden of showing that the coal was in general unsalable in the market. He might reject any particular lot sent on his order if it was not fairly within the designation of “ merchantable coal,” but a single failure would not warrant a rescission of the contract. He must show that it was not within the reasonable limits of the trade in coal, and that from its frequency it would be unjust to require him to continue his agency. This limitation should have been expressed to the jury in connection with the statement of the obligation to deliver merchantable coal.
A like difficulty arises from the rule of damages laid down. The difference between the price at which coal was to be sold to Taggart and that which the company realized after he renounced his engagement does not furnish the true basis of recovery. Whatever may hereafter be said of it as an element in the problem, it is not the principal term. That is to be found in the services agreed to be rendered, plus the cost of replacing them on the abandonment. The company introduced evidence which tended to show that, on Taggart’s refusal to further continue to “push the sale” of their coal, they procured another agent to fill his place at some cost, and, so far as might be, themselves endeavored to sell the coal, at an added expense. This was the principal damage which they were entitled to recover, and it was error for the court to state the law otherwise. There might possibly have been an injury sustained in the matter of the price at which the company were, after the change, compelled to dispose of their product; but the difference in price is not per se a measure by which to determine the injury. In a special and limited sense it might be. Should the proof demonstrate that the company was only able to procure an agent to handle their production by conceding less advantageous terms to *66 them in the matter of the price which the agent would pay, whereby their profits were diminished, such proof would entitle them to go to the jury on the question of a loss of profits as shown in the matter of price. On the other hand, if the new bargain was a more advantageous one to the company, it would, on a similar principle, reduce their recovery. The question of sales to purchasers generally, and the matter of profits resulting therefrom, can in no manner be said to properly enter into the solution of the question of damage.
The jury was not properly instructed upon either of these matters, and the error of the court in these particulars compels a reversal of the judgment.

Reversed.